## IN THE UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF ARKANSAS
## WESTERN DIVISION

**JAMES R. PICKENS**                                                    **PLAINTIFF**

**V.**                          **NO. 4:15CV00433-BSM-JTR**

**CAROLYN W. COLVIN,**                                           **DEFENDANT**
**Acting Commissioner,**
**Social Security Administration**

### RECOMMENDED DISPOSITION

The following Recommended Disposition ("Recommendation") has been sent to United States District Judge Brian S. Miller.  You may file written objections to all or part of this Recommendation.  If you do so, those objections must: (1) specifically explain the factual and/or legal basis for your objection; and (2) be received by the Clerk of this Court within fourteen (14) days of this Recommendation.  By not objecting, you may waive the right to appeal questions of fact.

**I.  Introduction:**

Plaintiff, James R. Pickens ("Pickens"), applied for disability benefits on June 18, 2012, alleging a disability onset date of March 28, 2011.  (Tr. at 24).  After conducting a hearing, the Administrative Law Judge ("ALJ") denied his application.  (Tr. at 36). The Appeals Council denied Pickens's request for review.  (Tr. at 1).  The ALJ's decision now stands as the final decision of the Commissioner, and Pickens has requested judicial review.

For the reasons stated below, the Court affirms the decision of the Commissioner.

## II.  The Commissioner's Decision:

The ALJ found that Pickens had not engaged in substantial gainful activity since the alleged onset date of March 28, 2011.  (Tr. at 26).  The ALJ found at Step Two that Pickens had the following severe impairments: musculoskeletal disorder, osteoarthritis, respiratory disorder, cardiovascular disorder, hearing loss, and depression.  *Id*.  At Step Three, the ALJ determined that Pickens's impairments did not meet or equal a listed impairment.  (Tr. at 27). Before proceeding to Step Four, the ALJ determined that Pickens had the residual functional capacity ("RFC") to perform light work except for the following limitations: 1) lifting and carrying 10 pounds and occasionally 20 pounds; 2) pushing and/or pulling within the limits of lifting and carrying; 3) sitting for a total of 6 hours in an 8-hour workday;  4) standing and walking for a total of 4 hours in an 8-hour workday; 5) work that involves simple tasks that are learned and performed by rote, where little judgment is required, with few workplace changes; 6) simple, direct, and concrete supervision; and 7) a controlled environment with no exposure to temperature extremes, dust, fumes, or smoke in concentrated amounts.  (Tr. at 30).  Next, the ALJ found that Pickens was unable to perform any past relevant work.  (Tr. at 34). Based on testimony from the Vocational Expert, the ALJ held that, based on Pickens's age, education, work experience, and RFC, jobs existed in significant numbers in the national economy that he could perform.  *Id*. Consequently, the ALJ found that Pickens was not disabled.  (Tr. at 36).

## III.  Discussion:

2

A.  Standard of Review

The Court's function on review is to determine whether the Commissioner's decision is supported by substantial evidence on the record as a whole and whether it is based on legal error.  *Miller v. Colvin*, 784 F.3d 472, 477 (8th Cir. 2015); *see also* 42 U.S.C. § 405(g). While "substantial evidence" is that which a reasonable mind might accept as adequate to support a conclusion, "substantial evidence on the record as a whole" requires a court to engage in a more scrutinizing analysis:

> "[O]ur review is more than an examination of the record for the existence of substantial evidence in support of the Commissioner's decision; we also take into account whatever in the record fairly detracts from that decision." Reversal is not warranted, however, "merely because substantial evidence would have supported an opposite decision."

*Reed v. Barnhart*, 399 F.3d 917, 920 (8th Cir. 2005) (citations omitted).

B.  Pickens's Arguments on Appeal

Pickens argues that substantial evidence does not support the ALJ's decision to deny benefits.  He contends that the ALJ erred in: 1) failing to perform the psychiatric review technique at Step Two; 2) assessing the credibility of Pickens's subjective complaints; and 3) making his RFC determination.  Reviewing the entire record, the Court finds that the ALJ's determinations were supported by substantial evidence.

Pickens argues that where there are mental impairments, an ALJ is required to fill out a Psychiatric Review Technique ("PRT") form.  The technique involves making a determination of whether there is a mental impairment, followed by a rating of the degree of functional limitation resulting from the mental impairment.  *Nicola v. Astrue*, 480 F.3d 885,

887 (8th Cir. 2007). The standardized PRT form is now used only at the initial and reconsideration levels; at the ALJ hearing and Appeals Council levels, documentation of the application of the PRT is in the decision itself, rather than on a separate form. 20 C.F.R. §§ 404.1520a(e), 416.920a(e) (2007). If a psychological examiner completed a form before the hearing and the ALJ discussed the technique within the decision, the ALJ has met the requirement for assessment of mental impairments. Moreover, if an ALJ fails altogether to use the technique, it may still constitute harmless error. *Cuthrell v. Astrue*, 702 F.3d 1114, 1117-18 (8th Cir. 2013).

Brad F. Williams, Ph.D, a state-agency examiner, used the PRT to make the determination that Pickens suffered from depression. (Tr. at 172). He concluded, however, that Pickens did not have marked or extreme functional limitations and did not meet Listing 12.04. (Tr. at 172). His PRT evaluated Paragraphs A, B, and C of listing 12.04. Dr. Williams's clinical use of the PRT comports with the Commissioner's regulations.

Pickens argues that his anxiety was a medically determinable impairment. (Pl. Brief, p. 9). Pickens does not list anxiety as an impairment in his initial application. (Tr. at 105). Pickens did not seek mental health treatment from the onset date of March 28, 2011 through the date of the state consultative exam on August 28, 2012. At that exam, he reported that he did not feel anxious all the time and his depression was doing better. (Tr. at 534). He said he did not have any obstacles in obtaining treatment because he had "his faith and the Bible to rely on." *Id*. He had not had any inpatient hospital stays and had not engaged in counseling. *Id*. The examiner diagnosed him with major depression but not anxiety.

4

Four months later, on January 10, 2013 (without any intervening mental health treatment), Pickens was seen by James Derrick, Licensed Psychological Examiner. (Tr. at 562). Pickens again said he was not seeking treatment and was taking no anxiety medications. (Tr. at 564). Mr. Derrick reported a cooperative behavioral tone and no signs of distress. *Id.* Pickens's mood and affect were calm and appropriate. *Id.* Mr. Derrick diagnosed Pickens with anxiety but assigned him a Global Assessment of Functioning score of 52, which indicates only moderate symptoms. Mr. Derrick recommended sustained treatment sessions, but, after only three sessions, Pickens's treatment was discontinued for failure to keep appointments. (Tr. at 567-72, 593, 597). When a claimant has not treated his anxiety, the ALJ is justified in ruling out anxiety as an impairment. *Smith v. Shalala*, 987 F.2d, 1371, 1375 (8th Cir. 1993).

Pickens contends that if the ALJ had used the PRT, he would have determined anxiety to be a severe impairment. The ALJ discussed the PRT in his decision, evaluating the criteria of listing 12.04 and Pickens's functional limitations. (Tr. 28-29). His PRT discussion aligned with the PRT done by Brad Williams, which did not diagnose anxiety. He discussed Pickens's failure to pursue treatment and lack of medications. He, therefore, met his duty with regard to the PRT and there is no error in the ALJ's determination that anxiety was not a severe impairment.

Pickens's next argument is that the ALJ failed to properly apply the *Polaski* factors. The ALJ must weigh five factors in evaluating a claimant's subjective complaints of pain: 1) the claimant's daily activities; 2) the duration, frequency, and intensity of pain; 3)

precipitating and aggravating factors; 4) dosage, effectiveness, and side effects of medication; and 5) functional restrictions. *Polaski v. Heckler*, 739 F.2d 1320, 1322 (8th Cir. 1984).

Pickens is able to engage in daily activities that render his allegations of pain less than credible. He feeds and dresses himself, and he attends to personal hygiene without assistance. (Tr. at 29).  He performs household chores, prepares meals, and takes care of his child, meeting her at the bus stop each day.  (Tr. at 29).

The ALJ noted that walking and squatting were painful for Pickens.  (Tr. at 32). Hydrocodone was prescribed but no therapy or surgery was recommended for his back injury.  *Id*. On his pain report, dated July 28, 2012, Pickens listed taking only Hydrocodone for his pain. (Tr. at 284).  He reported no side effects from other medications but was told to avoid the sun and operating heavy machinery.  *Id*.  No doctors placed any functional limitations on Pickens.   Based on the ability to engage in activities of daily living, conservative treatment, lack of side effects, and no functional restrictions, the ALJ properly concluded that Pickens's subjective complaints of pain were not entirely credible. The ALJ's credibility analysis sufficiently addressed the *Polaski* factors. Courts will defer to the ALJ's credibility findings when *Polaski* is considered, even if every factor is not discussed in depth. *Bradley v. Astrue*, 528 F.3d 1113, 1115 (8th Cir. 2008); *Brown v. Chater*, 87 F.3d 963, 966 (8th Cir. 1996).

Pickens's final argument is that the ALJ made an incorrect ruling on RFC.  He asserts that the ALJ erred in determining his RFC. The medical record contains substantial evidence

6

supporting the ALJ's RFC determination.

A cardiac examination in 2010 showed normal heart conditions. (Tr. at 31). Following an episode of kidney stones, Pickens underwent a clinical exam, but no treatment was recommended. *Id.* Based on Pickens's elevated cholesterol, he was told to exercise, drink more water, and cut down on sodas. *Id.* On December 1, 2010, Pickens weighed 228 pounds. At the time of the hearing in 2013, he weighed 250 pounds, which does not indicate he followed the protocol ordered by his doctors. (Tr. at 47).

Dr. Jacky F. Dunn, D.O., who had only seen Pickens in the emergency room, filled out a checkbox form on May 1, 2012 detailing profound limitations on Pickens's ability to perform work functions. (Tr. at 31, 415-19). He only listed arthritis as the limiting condition. *Id.* Dr. William L. Berry, M.D., likewise filled out a checkbox form stating significant limitations. (Tr. 600-603). The form is not supported by objective clinical testing. Moreover, a conclusory checkbox form has little evidentiary value when it cites to no medical evidence and provides little or no elaboration. *Anderson v. Astrue*, 696 F.3d 790, 794 (8th Cir. 2012).

On August 29, 2012, Dr. Michael R. Westbrook, M.D., conducted a clinical examination of Pickens and found a full range of motion in Pickens's cervical and lumbar spine. He concluded Pickens had mild limitations, generally. (Tr. 32). An MRI of the pelvis following back and hip pain revealed normal conditions. *Id.*

As for mental impairments, James Derrick, LPE, saw Pickens four times in 2013. (Tr. at 562-99). As noted above, Pickens discontinued treatment voluntarily. He did not take any medications for his anxiety or depression. Mr. Derrick was the mental health provider with

the most consistent (albeit limited) treatment of Pickens, and he found only moderate symptoms, and assigned a GAF of 52.  (Tr. at 564).  He recommended ongoing treatment, which Pickens did not pursue.

State examiner Julie S. Wallace, Ph.D., also found only moderate limitations due to mental impairments, and assigned a GAF of 51-61.  (Tr. at 32).  She observed that Pickens had the ability to attend and sustain concentration and complete work-like tasks within an acceptable time frame.  *Id*.  The mental health evidence supports a finding of limited restrictions, and is not contradicted by other evidence in the record.

The ALJ bears the primary responsibility for assessing a claimant's "residual functional capacity" – that is, what he or she can still do, in spite of severe impairments.  The finding must be based on all relevant evidence in the record.  *Wildman v. Astrue*, 596 F.3d 959, 969 (8th Cir. 2010).  Pickens's assigned RFC was proper considering the medical evidence as a whole, and the ALJ gave proper weight to the providers who saw him.

**IV.  Conclusion:**

It is not the task of this Court to review the evidence and make an independent decision. Neither is it to reverse the decision of the ALJ because there is evidence in the record which contradicts his findings. The test is whether there is substantial evidence in the record as a whole which supports the decision of the ALJ. *Miller*, 784 F.3d at 477. The Court has reviewed the entire record, including the briefs, the ALJ's decision, and the transcript of the hearing. The Court concludes that the record as a whole contains ample evidence that "a reasonable mind might accept as adequate to support [the] conclusion" of the ALJ in this

case. *Richardson v. Perales*, 402 U.S. 389, 401 (1971). The Court further concludes that the ALJ's decision is not based on legal error.

Accordingly, the finding that Pickens was not disabled within the meaning of the Social Security Act, therefore, must be, and hereby is affirmed. The case is dismissed, with prejudice.

IT IS SO ORDERED this 27th day of September, 2016.

_____
UNITED STATES MAGISTRATE JUDGE